Iam1ozop

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        16 Cr. 692 (JMF)

 5   IVARS OZOLS,

 6              Defendant.               Plea

 7   ------------------------------x

 8                                        New York, N.Y.
                                          October 22, 2018
 9                                        4:18 p.m.

10
     Before:
11
                        HON. JESSE M. FURMAN,
12
                                          District Judge
13

14                       APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     BY:  EMILY JOHNSON
17        DANIEL G. NESSIM
          Assistant United States Attorneys
18
     KRAMER, LEVIN , NAFTALIS & FRANKEL, LLP
19        Attorneys for Defendant
     BY:  DARREN A. LaVERNE, ESQ.
20        NOLAN J. ROBINSON, ESQ.

21
     ALSO PRESENT:  CHRISTINA FOX, Special Agent, FBI
22

23   ALSO PRESENT:  ANDREW TARUTZ, Interpreter (Russian)

24

25
```

Iam1ozop

```
 1           (Case called)

 2           THE DEPUTY CLERK:  Counsel, please state your name for

 3   the record.

 4           MS. JOHNSON:  Good afternoon, your Honor.  Emily

 5   Johnson and Daniel Nessim for the United States.  And joining

 6   us at counsel table is Special Agent Christina Fox with the

 7   Federal Bureau of Investigation.

 8           THE COURT:  Good afternoon to you.  I hope I didn't

 9   say anything that made Mr. Hellman take off.

10           MR. LaVERNE:  Good afternoon, your Honor.  Darren

11   LaVerne for Mr. Ozols, and I have with me at counsel table

12   Nolan Robinson, who is an attorney in our office.

13           THE COURT:  Good afternoon to all of you as well.  My

14   apologies for the fact that you've had to wait so long.  That

15   last proceeding took a little longer than expected.

16           MR. LaVERNE:  No worries.

17           THE COURT:  All right.  Mr. Ozols, we're joined here

18   by a Russian language interpreter, I believe.  Just to confirm

19   before we proceed any further, are you able to understand the

20   interpreter?

21           THE DEFENDANT:  Yes.

22           THE COURT:  All right.  If at any point during this

23   proceeding you have any trouble understanding either because of

24   a language issue or because of the headphones or something,

25   just let me know and we will take care of the problem right
```

Iam1ozop

1    away.  Understood?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  I have been advised that you wish to

4    change your plea and enter a plea of guilty to Count One of the

5    superseding indictment, S11 16 Cr. 692.  Is that correct?

6                    THE DEFENDANT:  Yes, correct.

7                    THE COURT:  All right.  And counsel, that is the

8    indictment on which Mr. Ozols had been arraigned, correct?

9                    MR. LaVERNE:  That is correct, your Honor.

10                   THE COURT:  All right.  Now before I accept your

11   guilty plea, Mr. Ozols, I need to ask you certain questions to

12   ensure that you are pleading guilty because you are in fact

13   guilty and not for some other reason, to ensure that you

14   understand the rights that you would be giving up by pleading

15   guilty, and to ensure that you understand the potential

16   consequences of a guilty plea.  If you do not understand any of

17   my questions, I want you to let me know right away so that we

18   can explain it to you more fully, and if at any point you wish

19   to speak with your lawyers, just let me know that and I will

20   give you however much time you wish to speak with them.  Do you

21   understand all that?

22                   THE DEFENDANT:  Yes.

23                   THE COURT:  All right.  I'll ask my deputy,

24   Ms. Smallman, to administer the oath to Mr. Ozols at this time.

25                   (Defendant sworn)

Iam1ozop

1          THE COURT:  You may be seated.

2          You are now under oath, which means that if you answer

3    any of my questions falsely, you may be subject to prosecution

4    for the separate crime of perjury.  Do you understand that?

5          THE DEFENDANT:  I understand.

6          THE COURT:  What is your full name?

7          THE DEFENDANT:  Ivars Ozols.

8          THE COURT:  And how old are you?

9          THE DEFENDANT:  I'm 40.

10         THE COURT:  How far did you go in school?

11         THE DEFENDANT:  I went to college but I did not

12   complete it.

13         THE COURT:  And where did you go to college?

14         THE DEFENDANT:  Latvia.

15         THE COURT:  Have you ever been treated or hospitalized

16   for any mental illness?

17         THE DEFENDANT:  No, never.

18         THE COURT:  Are you now or have you recently been

19   under the care of a doctor or a mental health professional?

20         THE DEFENDANT:  No.

21         THE COURT:  Have you ever been treated or hospitalized

22   for any addiction, including drug or alcohol addiction?

23         THE DEFENDANT:  No.

24         THE COURT:  In the last 48 hours have you taken any

25   drugs, medicine, pills, or had any alcohol?

Iam1ozop

1          THE DEFENDANT:  No.

2          THE COURT:  Is your mind clear today?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you understand what is happening here

5     today?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Mr. LaVerne, have you discussed this

8     matter with Mr. Ozols, I assume?

9          MR. LaVERNE:  I have, your Honor.

10          THE COURT:  And in your judgment does he understand

11     the rights that he would be giving up by pleading guilty?

12          MR. LaVERNE:  Yes, your Honor.

13          THE COURT:  And in your judgment is he capable of

14     understanding the nature of these proceedings?

15          MR. LaVERNE:  Yes.

16          THE COURT:  Does either counsel have any doubt as to

17     the defendant's competence to plead guilty at this time?

18          MR. LaVERNE:  No, your Honor.

19          MS. JOHNSON:  No, your Honor.

20          THE COURT:  Sorry.  You said no as well?

21          MS. JOHNSON:  No.

22          THE COURT:  All right.  On the basis of Mr. Ozols's

23     responses to my questions, my observations of his demeanor here

24     in court, and the representations of counsel, I find that he is

25     fully competent to enter an informed plea of guilty at this

6

Iam1ozop

1     time.

2             Mr. Ozols, have you received a copy of the indictment

3     S11 16 Cr. 692 containing the charge to which you intend to

4     plead guilty?

5             THE DEFENDANT:  Yes.

6             THE COURT:  And did you read the charge to which you

7     intend to plead guilty?

8             THE DEFENDANT:  Yes.

9             THE COURT:  And was that in English or was it

10    translated for you into Russian or Latvian?

11            THE DEFENDANT:  It was interpreted.

12            THE COURT:  All right.  Did you have enough time to

13    discuss the charge to which you are pleading guilty with your

14    lawyers and any possible defenses to that charge?

15            THE DEFENDANT:  Yes.

16            THE COURT:  And have your lawyers explained to you the

17    consequences of entering a guilty plea?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Are you satisfied with their

20    representation of you?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Now I have here a written Advice of Rights

23    form that you appear to have signed, along with the

24    interpreter, dated yesterday.

25            Is that correct, Mr. LaVerne?

Iam1ozop

1          MR. LaVERNE:  That is correct, your Honor.

2          THE COURT:  All right.  I'll mark this as Court

3     Exhibit 1 and provide it to the government to retain in its

4     possession.

5          Mr. Ozols, I'm showing you the second page where you

6     appear to have signed.  Is that your signature there?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And you signed that yesterday with the

9     assistance of an interpreter, is that correct?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And before you signed it was it

12     interpreted to you in a language that you understand?

13          THE DEFENDANT:  Yes.

14          MR. LaVERNE:  Your Honor, for the record, the form was

15     translated into Russian, in paper form, and provided to

16     Mr. Ozols.

17          THE COURT:  All right.  Thank you.  And that was done

18     by someone who speaks Russian, I assume?

19          MR. LaVERNE:  Yes, it was a certified court

20     interpreter.

21          THE COURT:  Thank you.

22          And before you signed it, Mr. Ozols, did you discuss

23     it with your lawyers?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And did they explain it to you and answer

Iam1ozop

any questions you may have had about the form before you signed

it?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Now I'm going to go over many

of the same things with you orally just to ensure that you

understand the consequences of what you are doing.  Again, if

there's anything you do not understand, please let me know

right away.

Under the Constitution and laws of the United States,

you have the right to plead not guilty to the charges in the

indictment.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you did plead not guilty, you would be

entitled to a speedy and public trial by a jury on the charges

in the indictment.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At that trial you would be presumed to be

innocent and you would not have to prove that you were

innocent.  Instead, the government would be required to prove

your guilt by competent evidence beyond a reasonable doubt

before the jury could find you guilty.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  In order to find you guilty, a jury of 12

people would have to agree unanimously that you were guilty.

Do you understand that?

Iam1ozop

1         THE DEFENDANT:  Yes.

2         THE COURT:  At that trial and at every stage of your

3    case, you would be entitled to the assistance of a lawyer, and

4    if you could not afford a lawyer, one would be appointed at

5    public expense free of cost to represent you.  Do you

6    understand that?

7         THE DEFENDANT:  Yes.

8         THE COURT:  During a trial, the witnesses for the

9    government would have to come to court and testify in your

10   presence, and your lawyers would have an opportunity to

11   cross-examine those witnesses and object to any evidence

12   offered against you by the government.  You would also have an

13   opportunity to introduce evidence in your own defense, and you

14   would have the right to have subpoenas issued or other process

15   used to compel witnesses to come to court and testify in your

16   defense.  Do you understand all that?

17        THE DEFENDANT:  Yes.

18        THE COURT:  At a trial, you would have the right to

19   testify in your own defense as well, but you would have the

20   right not to testify also, and if you chose not to testify,

21   then no one, including the jury, could draw any inference or

22   suggestion of guilt from the fact that you did not testify.  Do

23   you understand that?

24        THE DEFENDANT:  Yes.

25        THE COURT:  Before trial, you would have an

Iam1ozop

| | |
|---|---|
| 1 | opportunity, if you have not waived it, to seek suppression or |
| 2 | exclusion of the evidence that the government were to use |
| 3 | against you at a trial.  Do you understand that? |
| 4 | THE DEFENDANT:  Yes. |
| 5 | THE COURT:  If you were convicted at a trial, you |
| 6 | would have the right to appeal that verdict and any pretrial |
| 7 | rulings that I made in connection with your case.  Do you |
| 8 | understand that? |
| 9 | THE DEFENDANT:  Yes. |
| 10 | THE COURT:  If you plead guilty, you will also have to |
| 11 | give up your right not to incriminate yourself because I may |
| 12 | ask you questions about what you did in order to satisfy myself |
| 13 | that you are guilty as charged, and you will have to admit and |
| 14 | acknowledge your guilt.  Do you understand that? |
| 15 | THE DEFENDANT:  Yes. |
| 16 | THE COURT:  If you plead guilty and if I accept your |
| 17 | guilty plea, you will give up your right to a trial and the |
| 18 | other rights that we have discussed, other than your right to a |
| 19 | lawyer, which you keep whether or not you plead guilty, but |
| 20 | there will be no trial and I will enter a judgment of guilty |
| 21 | and sentence you on the basis of your plea after I have |
| 22 | considered the presentence report prepared by the United States |
| 23 | Probation Department and any submissions that I get from the |
| 24 | lawyers.  There will be no appeal with respect to whether you |
| 25 | did or did not commit the offense to which you're pleading |

Iam1ozop

```
 1   guilty or with respect to whether the government could use the

 2   evidence that it has against you.  Do you understand all that?

 3            THE DEFENDANT:  Yes.

 4            THE COURT:  Even now as you are entering this plea,

 5   you have the right to change your mind, to plead not guilty,

 6   and to go to trial on the charges in the indictment.  Do you

 7   understand that?

 8            THE DEFENDANT:  Yes.

 9            THE COURT:  Do you understand each and every one of

10   the rights that I have explained to you?

11            THE DEFENDANT:  Yes.

12            THE COURT:  And are you willing to give up your right

13   to a trial and the other rights that we have discussed?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Do you understand that you are charged in

16   Count One of the indictment with conspiracy to commit bank and

17   wire fraud, in violation of Title 18 United States Code

18   Section 1349?  Do you understand that that is the charge?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Ms. Johnson, would you please state the

21   elements of that offense.

22            MS. JOHNSON:  Yes, your Honor.  First, the government

23   would have to prove beyond a reasonable doubt that there was

24   an --

25            THE INTERPRETER:  Could you speak up, please.
```

Iam1ozop

1          MS. JOHNSON:  Certainly.

2          The government would have to prove beyond a reasonable

3     doubt that there was an unlawful agreement between two or more

4     people, the unlawful objective of that agreement being to

5     commit bank or wire fraud.

6          And second, the government would have to prove beyond

7     a reasonable doubt that the defendant knowingly and wilfully

8     entered into that agreement.

9          With respect to the conspiracy count, the government

10    would not have to prove that the substantive crime of bank or

11    wire fraud were in fact committed but rather that they were the

12    objective of the conspiracy.

13         The elements of bank fraud are:

14         First, that there was a scheme or artifice to defraud

15    or to obtain money or property in the custody of a bank;

16         Second, that the defendant participated in that scheme

17    with intent to defraud; and

18         Third, that the bank was insured by the Federal

19    Deposit Insurance Corporation.

20         The elements of wire fraud are:

21         First, that there was a scheme or artifice to defraud

22    or to obtain property by false pretenses;

23         Second, that the defendant participated in that scheme

24    with intent to defraud; and

25         Third, that there was the use of interstate wires in

Iam1ozop

1   furtherance of the fraud.

2          And finally, the government would have to prove by a

3   preponderance of the evidence that the venue is proper in the

4   Southern District of New York.

5          THE COURT:  Thank you.

6          Mr. Ozols, do you understand that with the exception

7   of the venue requirement that Ms. Johnson mentioned at the very

8   end, as to which the government's burden at a trial would be a

9   preponderance of the evidence, that with that exception, that

10  the government would have to prove the other elements, the

11  other two elements that Ms. Johnson mentioned at the beginning,

12  beyond a reasonable doubt before a jury could find you guilty

13  of Count One?  Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Let me tell you now about the maximum

16  possible penalties for this crime.  By maximum, I mean the most

17  that could possibly be imposed upon you.  It doesn't

18  necessarily mean that that is the sentence that you would

19  receive, but you do have to understand that by pleading guilty,

20  you are exposing yourself to a combination of punishments up to

21  the statutory maximum.  Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  First, let me tell you about the possible

24  restrictions on your liberty.

25         The maximum term of imprisonment for this crime is 30

Iam1ozop

1    years in prison, which could be followed by up to three years

2    of supervised release.

3           Supervised release means that you would be subject to

4    supervision by the probation department.  There would be rules

5    of supervised release that you would be required to follow, and

6    if you violated any of those rules, you could be returned to

7    prison to serve additional time without credit for the time

8    spent on your underlying sentence or credit for time spent on

9    postrelease supervision.  And you could be returned to prison

10   without a jury trial as well.  Do you understand all that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  You should understand that there is no

13   parole in the federal system in this country, which means that

14   if you were sentenced to prison, you would not be released

15   early on parole.  There is a limited opportunity to earn credit

16   for good behavior, but if you were sentenced to prison, you

17   would have to serve at least 85 percent of the time to which

18   you were sentenced.  Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  In addition to those restrictions on your

21   liberty, you should understand that there are certain financial

22   penalties that are part of the maximum possible sentence:

23          First, the maximum allowable fine is the greatest of

24   $1 million, twice the gross pecuniary or financial gain derived

25   from the offense, or twice the gross pecuniary or financial

Iam1ozop

1   loss to someone other than you as a result of the offense;

2          Second, I can order restitution to any person or

3   entity injured as a result of your criminal conduct;

4          Third, I may order you to forfeit all property derived

5   from the offense or used to facilitate the offense; and

6          Finally, I must order a mandatory special assessment

7   of $100.

8          Do you understand those are the maximum possible

9   penalties?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And I understand that in this case you do

12   admit to the forfeiture allegation with respect to Count One of

13   the superseding indictment and agree to forfeit to the United

14   States a sum of $234,522 in United States currency.  Is that

15   correct?

16          THE DEFENDANT:  Yes.

17          THE COURT:  All right.  Now do you understand that

18   what I just listed, that those are the maximum possible

19   penalties?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Am I correct that you are not a citizen of

22   the United States?  Is that correct, Mr. Ozols?

23          THE DEFENDANT:  Yes you understand correctly.

24          THE COURT:  All right.  Do you understand that by

25   pleading guilty, there may be negative or adverse effects on

Iam1ozop

1   your immigration status in this country?  For example, you may

2   be detained by the immigration authorities following the

3   completion of your criminal sentence, you may be removed or

4   deported from the United States, you may be denied admission to

5   the United States in the future, and you may be denied

6   citizenship in the United States.  Do you understand that those

7   are among the negative consequences of a guilty plea?

8           THE DEFENDANT:  Yes.

9           THE COURT:  And have you discussed the immigration

10  consequences of a guilty plea with your lawyers?

11          THE DEFENDANT:  Not yet.

12          THE COURT:  All right.  Would you like an opportunity

13  to do so now.

14          MR. LaVERNE:  Your Honor, I'm sorry.  Can I have just

15  a moment just to clarify something with him.

16          THE COURT:  Sure.

17          (Mr. LaVerne conferring with the defendant)

18          MR. LaVERNE:  Your Honor, and Mr. Ozols can confirm

19  this, but we did discuss the likely consequences of a guilty

20  plea with respect to immigration.  I think he was just confused

21  as to what you were asking, if we had some further discussions

22  about immigration beyond that.

23          THE COURT:  All right.  Understood.  Let me ask again.

24          Is it correct, Mr. Ozols, that you did discuss with

25  your lawyers the potential consequences of a guilty plea on

Iam1ozop

1  your immigration status?

2        THE DEFENDANT:  Yes, yes, that I would be deported.

3        THE COURT:  All right.  Do you understand that as a

4  result of your guilty plea, you may also lose certain valuable

5  rights in this country, to the extent that you have them or

6  could otherwise obtain them, such as the right to vote, the

7  right to serve on a jury, the right to hold public office, and

8  the right to possess any kind of firearm?  Do you understand

9  that?

10        THE DEFENDANT:  Yes, I understand.

11        THE COURT:  Are you serving any other sentence at this

12  time?

13        THE DEFENDANT:  No.

14        THE COURT:  And are you being prosecuted in any other

15  court at this time?

16        THE DEFENDANT:  No.

17        THE COURT:  Do you understand that if your lawyer or

18  anyone else has attempted to predict what your sentence will be

19  in this case that their predictions could be wrong?

20        THE DEFENDANT:  I understand.

21        THE COURT:  It's important to understand that no

22  one -- not your lawyers, not the lawyers for the government --

23  no one can give you any promise or assurance about what your

24  sentence will be in this case, and that is because your

25  sentence will be determined by me and by me alone, and I'm not

Iam1ozop

1    going to do that today.  Instead I will wait until I receive

2    the presentence report that I mentioned earlier, I will do my

3    own calculation of how the United States Sentencing Guidelines

4    apply to your case, I will consider any submissions that I get

5    from the lawyers and ultimately the factors that govern

6    sentencing in a statute, Title 18 United States Code

7    Section 3553.  Do you understand all that?

8             THE DEFENDANT:  I understand.

9             THE COURT:  And have you discussed that process, the

10   sentencing process, with your lawyers?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Now even if your sentence is different

13   from what your lawyers or anyone else has told you that it

14   might be, even if it is different from what you expect or hope

15   it to be, and even if it is different from what may be in the

16   plea agreement, which we will discuss in one moment, you will

17   still be bound by your guilty plea and you will not be allowed

18   to withdraw your plea.  Do you understand that?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Now I understand that there is a written

21   plea agreement between you and your lawyer and the lawyers for

22   the government.  Is that correct?

23            THE DEFENDANT:  Yes.

24            THE COURT:  I have the written original letter plea

25   agreement here dated October 16, 2018, from Assistant United

Iam1ozop

1  States Attorneys Matthew Hellman and others to your lawyer,

2  Mr. LaVerne.  I'll mark this as Court Exhibit 2 and provide it

3  to the government to retain in its possession after this

4  proceeding.

5       Turning to the last page, you appear to have signed

6  the last page dated today, October 22nd.  Is that your

7  signature there on that last page?

8       THE DEFENDANT:  Yes.

9       THE COURT:  Before you signed the plea agreement was

10  it translated for you into a language that you understand?

11       THE DEFENDANT:  Yes.

12       MR. LaVERNE:  Again, your Honor, he was provided -- a

13  written translation in Russian was provided to Mr. Ozols.

14       THE COURT:  All right.  So did you read that Russian

15  translation of the plea agreement, Mr. Ozols?

16       THE DEFENDANT:  Yes.

17       THE COURT:  And before you signed it did you discuss

18  it with your lawyers as well?

19       THE DEFENDANT:  Yes.

20       THE COURT:  Before you signed it did they explain it

21  to you and answer any questions that you may have had about the

22  plea agreement?

23       THE DEFENDANT:  Yes.

24       THE COURT:  And before you signed it did you fully

25  understand the plea agreement?

Iam1ozop

1          THE DEFENDANT:  Yes.

2          THE COURT:  All right.  Counsel, I understand that

3    there was a typographical error in the consent preliminary

4    order of forfeiture, a copy of which is attached to the plea

5    agreement -- namely, that in paragraph 1, it should read

6    $234,000, not 243,000; 234 being the number above and also the

7    number in the plea agreement.  Is that correct?

8          MS. JOHNSON:  Yes, that's correct.

9          MR. LaVERNE:  That is correct, your Honor.

10          THE COURT:  All right.  And I think while that

11   correction was made and initialed by counsel in the copy of the

12   proposed order for me to sign, I think it wasn't made in the

13   copy attached to the plea agreement that I marked as Court

14   Exhibit 2, and I will provide it to the government to retain in

15   its possession.  So I have made that change to the version

16   attached to the plea agreement and marked it with my initials

17   and today's date as well.

18          One of the features of your agreement, Mr. Ozols, is

19   that you have agreed with the government as to how the

20   Sentencing Guidelines apply to your case.  Is that correct?

21          THE DEFENDANT:  Yes.

22          THE COURT:  You should understand that that agreement

23   is binding on you and it is binding on the government, but it

24   is not binding on me.  I have my own independent obligation to

25   determine how the Sentencing Guidelines apply to your case.

Iam1ozop

 1   I'm not suggesting that I will come up with a different

 2   calculation than the one to which you have agreed, but I could,

 3   and even if I did, you would still be bound by your guilty

 4   plea, and you would not be allowed to withdraw your plea.  Do

 5   you understand that?

 6            THE DEFENDANT:  Yes.

 7            THE COURT:  Another feature of your agreement is that

 8   you have agreed to waive or give up your right to appeal or

 9   challenge any sentence that is within or below the Sentencing

10   Guidelines range of 41 to 51 months in prison.  That means that

11   if I sentenced you to 51 months' imprisonment or anything less

12   than 51 months' imprisonment, that you would have no right to

13   appeal or otherwise challenge that sentence.  Do you understand

14   that?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Does this written plea agreement

17   constitute your complete and total understanding of the entire

18   agreement between you and the government?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Has anything been left out of this written

21   plea agreement?

22            THE DEFENDANT:  Nothing.

23            THE COURT:  Other than what is written in this plea

24   agreement, has anyone made any promise to you or offered you

25   any inducement either to plead guilty or to sign the plea

Iam1ozop

agreement?

THE DEFENDANT:  No.

THE COURT:  Has anyone threatened you or forced you to plead guilty or to sign the plea agreement?

THE DEFENDANT:  No.

THE COURT:  Has anyone made a promise to you as to what your sentence will be?

THE DEFENDANT:  Nobody.

THE COURT:  Mr. Ozols, I'd like you now to tell me in your own words what you did that makes you believe that you are guilty of the crime charged in the superseding indictment.

MR. LaVERNE:  Your Honor, we've prepared a written allocution that we've gone over with Mr. Ozols several times.

THE COURT:  All right.  You may proceed.  Just please proceed and speak slowly and clearly so that everybody can understand.

THE DEFENDANT:  Approximately in June 2017, I agreed to come to the United States of America with the aim of opening banking accounts and to withdraw money.  That was accomplished, subject to requests made by other individuals.  And that was done in banks in the state of Florida.  I knew that it was, so to say, incorrect, incorrect or false information, and that this money was stolen from other individuals.  They were transferred to these accounts and I was withdrawing this money.  This is the end of my statement.

Iam1ozop

1          THE COURT:  All right.  Let me just confirm a couple
2     things.
3          Is it the case that the bank accounts to which you
4     referred, that they were opened using false or fraudulent
5     documents?
6          THE DEFENDANT:  Those were documents of companies and
7     firms.
8          MR. LaVERNE:  Your Honor, I think Mr. Ozols -- and
9     again, you should confirm it with him, but I think he would
10    allocute that he provided certain false information to the
11    banks in order to retrieve funds from those bank accounts.
12         THE COURT:  All right.  Is it the case, Mr. Ozols,
13    that you provided false information to the banks in order to
14    get the money from these bank accounts that you described?
15         THE DEFENDANT:  Yes.
16         THE COURT:  And did you do that in order to obtain
17    money to which you knew you were not legally entitled?
18         THE DEFENDANT:  Yes.
19         THE COURT:  And did you understand that that money
20    that was obtained was acquired by means of fraud?
21         THE DEFENDANT:  Yes.
22         THE COURT:  All right.  Mr. LaVerne, any disputes that
23    the banks involved here were insured by the FDIC?
24         MR. LaVERNE:  No, your Honor.
25         THE COURT:  And Ms. Johnson, can you state what the

Iam1ozop

1  basis for venue is here.  Is it the acts of co-conspirators

2  here in New York?

3       MS. JOHNSON:  Yes.  The co-conspirators opened a bank

4  account at a branch in New York in the name of a shell

5  corporation that was controlled by the conspiracy and utilized

6  by the conspiracy, and wires began and terminated in the

7  Southern District of New York.

8       THE COURT:  All right.  Any dispute on that score,

9  Mr. LaVerne?

10       MR. LaVERNE:  No, your Honor.

11       THE COURT:  All right.  Mr. Ozols, when you did these

12  things, first of all, did you understand and know that the

13  object of the agreement that you had with others was to obtain

14  money from a bank to which you were not entitled and to do so

15  by means of false or fraudulent information?

16       THE DEFENDANT:  Yes.

17       THE COURT:  All right.  And did you understand and

18  know that what you were doing was wrong and against the law?

19       THE DEFENDANT:  Yes.

20       THE COURT:  Mr. LaVerne, are you aware of any valid

21  defense that would prevail at trial or do you know of any

22  reason that Mr. Ozols should not be permitted to plead guilty?

23       MR. LaVERNE:  I do not, your Honor.

24       THE COURT:  Ms. Johnson, would you please proffer

25  briefly what the government's evidence would be if the

Iam1ozop

1  defendant were to go to trial and what it would show.

2          MS. JOHNSON:  Yes, your Honor.  The government would

3  present witness testimony from bank employees, law enforcement,

4  and victims.  The government would also present testimony from

5  cooperating witnesses who are members of the conspiracy.  The

6  government would offer documentary evidence in the form of bank

7  statements, account opening records, incorporation records,

8  other financial records, and surveillance images, as well as

9  electronic evidence, including phone evidence from other

10  members of the conspiracy.

11          THE COURT:  All right.  And are there any additional

12  questions that you'd like me to ask of Mr. Ozols?

13          MS. JOHNSON:  We believe it's implicit in his

14  allocution, but we just want to confirm that he agreed with

15  other individuals to undertake these actions.

16          THE COURT:  All right.  I think I also said something

17  to that effect in one of the questions before, but out of an

18  abundance of caution:

19          Mr. Ozols, my understanding is that what you described

20  earlier in the things that you did in this case, that you did

21  those in connection with other people who were participants in

22  these crimes, is that correct?

23          THE DEFENDANT:  Yes.

24          THE COURT:  All right.  And you jointly agreed with

25  those people to commit the crimes that you've described, is

Iam1ozop

1    that correct?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  Do both counsel agree that

4    there is a sufficient factual basis for a guilty plea to Count

5    One of the superseding indictment?

6              MR. LaVERNE:  Yes, your Honor.

7              MS. JOHNSON:  Yes, your Honor.

8              THE COURT:  Does either counsel know of any reason

9    that I should not accept the defendant's plea of guilty?

10             MR. LaVERNE:  No, your Honor.

11             MS. JOHNSON:  No, your Honor.

12             THE COURT:  Mr. Ozols, because you acknowledge that

13   you are in fact guilty as charged in Count One of the

14   indictment, because I am satisfied that you know of your

15   rights, including your right to go to trial, that you are aware

16   of the consequences of your plea, including the sentence that

17   may be imposed, and because I find that you are knowingly and

18   voluntarily pleading guilty, I accept your guilty plea and

19   enter a judgment of guilty on Count One of the superseding

20   indictment, S11 16 Cr. 692.

21             The probation department will want to interview you in

22   connection with the presentence report that it will be

23   preparing.  It is critical that anything you say to the

24   probation department in that interview is truthful and

25   accurate.  That report is important to me in deciding what to

Iam1ozop

sentence you to, and before sentencing, you and your lawyers

will have an opportunity to review the report.  I would urge

you to review it with care, and if you find any mistakes in the

report or anything that you wish to bring to my attention in

connection with sentencing that you share that with the lawyers

so that they can bring it to my attention in the most

appropriate fashion.  Do you understand all that?

             THE DEFENDANT:  Yes.

             THE COURT:  Mr. LaVerne, do you wish to be present in

connection with any interview?

             MR. LaVERNE:  Yes, your Honor.

             THE COURT:  I'll order that no interview take place

unless counsel is present.

             Sentencing will be set for February 5, 2019, at 3:45

in the afternoon.

             I direct the government to provide the probation

department with its factual statement of the offense within

seven days; defense counsel must arrange for the defendant to

be interviewed by probation within the next two weeks.

             In accordance with my individual rules and practices

for criminal cases, defense submissions for sentencing are due

two weeks prior to sentencing; the government's submission is

due one week prior to sentencing.  In the unlikely event that

you don't submit any substantive sentencing submissions, you

should file a letter to that effect so that we know.

Iam1ozop

```
 1              I do have here a consent preliminary order of
 2     forfeiture that appears to have been signed by the defendant
 3     and counsel dated today, October 22nd.  Any objection,
 4     Mr. LaVerne, to my signing and docketing that order?
 5              MR. LaVERNE:  No, your Honor.
 6              THE COURT:  All right.  I will do so.
 7              And anything else?
 8              MR. LaVERNE:  No.  Thank you.
 9              MS. JOHNSON:  Nothing from the government.
10              THE COURT:  All right.  In that case, I thank
11     everybody for their patience, and we are adjourned.  Thank you.
12              THE DEPUTY CLERK:  All rise.
13                              o0o
14
15
16
17
18
19
20
21
22
23
24
25
```