UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                              :

UNITED STATES OF AMERICA,          :

                               :        16-CR-692-7 (JMF)

         -v-                :

                               :     <u>MEMORANDUM OPINION</u>

IVARS OZOLS,                  :        <u>AND ORDER</u>

                     Defendant.     :

                               :

------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

On May 4, 2020, the Court received a letter from Defendant Ivars Ozols dated April 11, 2020, requesting a "reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)" so that he can be voluntarily deported to his home country of Latvia.  ECF No. 470, at 3-4.  Ozols has served approximately three quarters of a thirty-nine-month sentence for conspiracy to commit wire and bank fraud.  *See* ECF No. 232.  On May 12, 2020, the Court appointed counsel from the Criminal Justice Act Panel to represent Ozols in connection with his motion for compassionate release.  *See* ECF No. 475.  For substantially the reasons stated in the memorandum of law submitted by Ozols's appointed counsel, ECF No. 477, Ozols's motion is granted.

Under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), the Court "may reduce" a defendant's term of imprisonment "if it finds that . . . extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and the sentencing factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A)(i).  The statute also imposes a mandatory exhaustion requirement, *see id.* § 3582(c)(1)(A), which has been satisfied here because thirty days have passed since Ozols submitted his request for compassionate release to prison officials.

1

*See* ECF No. 474, at 15 (request dated May 3, 2020); ECF No. 477, at 11 n.19 (counsel noting that Ozols submitted his request on May 3, 2020).[1]

On the merits, Ozols satisfies all of the requirements for compassionate release.  First, as numerous courts have concluded, the threat of COVID-19 to those in prison constitutes an extraordinary and compelling reason for compassionate release.  *See, e.g.*, *United States v. Pena*, No. 15-CR-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020).

Next, release is consistent with the Section 3553(a) factors and applicable policy statements.  In 2019, Ozols was sentenced to thirty-nine months in prison after he pleaded guilty to one count of conspiracy to commit wire and bank fraud.  *See* ECF No. 232.  At sentencing, the Court noted that Ozols's crime was a "sophisticated" and "serious offense," but also that Ozols was not the "mastermind behind it," that it was his first offense, and that he showed "obvious remorse and contrition."  ECF No. 234, at 28-29.  Accordingly, the Court found that "there's not a great need for specific deterrence or a need to protect the public from further crimes of Mr. Ozols."  *Id.* at 30.  At the time, the Court's sentence was sufficient, but no greater than necessary, to achieve the purposes of sentencing.

---

[1]     The Government notes that prison officials previously stated that Ozols filed his request "on or about May 7, 2020."  ECF No. 474, at 4.  The discrepancy between this date and May 3, 2020, presumably reflects the difference between the date on which Ozols submitted his request to prison officials and the date on which his request was reviewed by the warden.  In such cases, the date on which the prisoner handed the request to prison officials controls.  *See, e.g.*, *United States v. Resnick*, No. 14-CR-810 (CM), 2020 WL 1651508, at *6 (S.D.N.Y. Apr. 2, 2020) ("The situation is analogous to the prisoner mailbox rule, which provides that an inmate's papers are deemed filed the day that they are signed and given to prison officials for mailing." (internal quotation marks omitted)).  In any event, on May 22, 2020, the Court issued an Order stating that the "statutory 30-day waiting period will end on June 2, 2020," ECF No. 479, and the Government has filed no opposition to that calculation.  Accordingly, any arguments to the contrary have been waived.

The balance weighs differently in the current circumstances.  Importantly, "[d]ue to the COVID-19 pandemic, the 'history and characteristics of the defendant' and the 'need . . . to provide the defendant with needed . . . medical care,' § 3553(a), now weigh heavily in favor of [Ozols's] release, given the health risk that continued incarceration poses to him."  *Pena*, 2020 WL 2301199, at *4.  Ozols is forty-two years old and suffers from anxiety and depression stemming from his service in the Latvian military.  *See* ECF No. 477, at 22; *see also* ECF No. 486 (describing Ozols's family history of heart and lung diseases).  He has already served approximately twenty-five months in prison, which constitutes about three-quarters of his sentence (after accounting for good time credit).  *See* ECF No. 474, at 2.  Ozols has used the time to better himself through work and education, and he has committed no disciplinary infractions in prison.  *See* ECF No. 477, at 23.  Thus, "[t]he time he has served in prison has already achieved much of the original sentence's retributive, deterrent, and incapacitative purpose," *Pena*, 2020 WL 2301199, at *4, and Ozols no longer poses "a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2).  The "need for general deterrence," ECF No. 234, at 30, has also been addressed by Ozols's substantial time served (not to mention the several months served with the grave risk of illness posed by COVID-19 to those in prison).  Taken together, the relevant considerations warrant compassionate release.

Accordingly, Ozols's motion is GRANTED.  More specifically, the Court orders that:

(1)    Ozols's sentence of incarceration in these cases is reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A);

(2)    Ozols is ordered released from Bureau of Prisons custody, effective immediately;

(3)    The Government shall arrange for Ozols to be transferred to federal immigration custody following his release, if appropriate; and

(4)    If Ozols is not transferred to federal immigration custody for voluntary deportation to Latvia, then upon his release, Ozols shall serve three years of supervised release, subject to the conditions of supervised release set forth in the

3

judgment dated February 14, 2019, *see* ECF No. 232, modified as follows:

(a) Ozols shall serve six months of supervised release on home confinement, to be enforced by GPS monitoring, at a residence approved by the Probation Department;

(b) Ozols is to report to the Probation Department at 500 Pearl Street, 6th Floor, New York, New York, at **10:00 a.m. fourteen days after his release** (during which time he is to self-quarantine at his approved residence), to have the GPS tracker affixed to his ankle;

(c) While on home confinement, Ozols must remain at his approved residence except to seek any necessary medical treatment, in each instance with prior notice and approval by the Probation Department; and

(d) Ozols must possess or have access to a telephone that will allow him to video-conference with the Probation Department.

The Government shall immediately notify the Bureau of Prisons of this Order.

SO ORDERED.

Dated: June 2, 2020
New York, New York

JESSE M. FURMAN
United States District Judge

4